Mr. Justice Smith
delivered the opinion of the court.
The appellant filed this bill to enjoin the collection of a note, given to secure the payment of part of the price of a certain lot in the city of Jackson, purchased by appellant of Finucane and Barnes. On this note, McDonald had brought suit and recovered judgment in the circuit court of Hinds. This case, vary *452 ing but little in aspect, was, before its present advent, twice in this court. First, on an appeal taken by the appellant, from an order of the chancellor dissolving the injunction. The decision of the chancellor on that appeal was affirmed, and the case is reported in 5 How. 542. Second, on an appeal taken by the appellee, from a decree of the chancellor overruling a motion to dissolve a second injunction, which had been obtained on an amended bill, filed after the dissolution of the first. This decree of the chancellor was reversed, and the case is reported in 9 S. & M. 13S. The decisions pronounced on these occasions, are final and conclusive on all the matters adjudicated, so far as the respective rights of the parties to this controversy are involved. The principles there settled constitute the law of the case, as far, at least, as the facts were there developed and reviewed by this court. But afterwards, in 1847, the appellant filed a second supplemental and amended bill, upon which he obtained a third injunction. This injunction was likewise dissolved, and he has appealed. The decree of the chancellor dissolving the third injunction, must be regarded as made exclusively on the statements and allegations of the last amended and supplemental bill. The sufficiency or insufficiency of these allegations must determine the propriéty of the decree.
In this bill, the only new or additional grounds taken, may be comprehended in the single allegation, that after the amended and supplemental bill was filed, the heirs at law of James C. Dickson, in an action of ejectment, which was pending at the filing of said bill, recovered judgment against appellant for one undivided half of the lot sold to him by Finucane and Barnes, and for which, in part payment, the' note enjoined in the hands of McDonald was given; that the judgment so recovered was not vacated or reversed, and that unless said judgment in ejectment shall be reversed, he will be turned out of the possession of one undivided moiety of said lot. No evidence of any character was introduced by either party, since the decision of this court reversing the order of the chancellor overruling the motion to dissolve the second injunction. With the exception of the additional matter above stated, the equities of the appellant *453 exist now as they did when that decision was made. The second supplemental bill was not answered; that additional matter is then to be taken as truly alleged. Our first inquiry, and perhaps the only one which it may be deemed necessary to make, is, therefore, whether the allegation of this new matter has placed the case without the operation of the principles previously settled. The facts adjudicated, and the principles of law held to apply, were, 1. That the possession of the lot was passed under the contract oí sale, and that the vendor remained, in the quiet and undisturbed occupancy of the same. 2. That the covenants in the case were independent; that appellant had bound himself to pay the money at all events, and was compelled to rely upon his remedy at law on the covenants in the title-bond. 3. That the bond from Caldwell to Finucane and Barnes showed an equitable title in them, which could be enforced ; that appellant was acquainted with the state of the title, and the contingencies of procuring a conveyance from the. representatives of Caldwell and Dickson, and having purchased, with a full knowledge of the title of Finucane & Barnes, he is not entitled to relief. 5 How. 545, 546. 4. That there is no proof in the record, that McDonald took the note with a know-ledge of the equities alleged to exist on the part of Green, and that no defect of title was shown by the chancery proceeding instituted by Finucane against the heirs at law of Caldwell and Dickson, as the allegations to that effect, of the amended and supplemental bill, was not admitted by the answer, and no proof was offered to sustain it. 9 S. & M. 143.
Green, at the purchase, knew the character and condition of the vendors’ title; he knew that they held only the title-bond of Caldwell, conditioned to convey upon the payment of the price of the lot by them; and that probably Caldwell’s title was but an equitable one. Finucane and Barnes believed this title to be a good one of its kind, and that a perfect legal title could be obtained, either by the voluntary act of Caldwell or by legal steps taken for that purpose. There is no pretence for charging them with false representations or fraudulent concealment in reference to the condition of their title. ' The defect of the legal *454 title, or rather the fact that Barnes and Finucane had none, or that they now cannot make one, in nowise constitutes a ground on which the collection of the money should be enjoined. Green purchased with a full knowledge of the title, and no fraud has been proven. If he had taken no precaution to secure himself by covenants, he could not, as between himself and the vendors, be shielded against the payment of the money, even on the ground of a total failure of consideration arising out of a de’fect of title in them. 5 How. R. 460, 542, and cases cited. But the bond of Finucane and Barnes shows, that he designed to protect himself against a possible failure of their equitable title. Under this state of case, the question in advance of any other open in the cause, is, Whether it has been satisfactorily shown that Finucane cannot obtain a conveyance of the legal title to the lot from the heirs at law of Caldwell and Dickson? As above remarked, the record before the filing of the last supplemental bill furnishes no evidence of a defect in the equitable title of Finucane. But the fact relied on to prove the incapacity of Finucane ever to convey, As the alleged recovery of the judgment in ejectment, predicated on the paramount legal title of the heirs of Dickson, for one half of the lot.
This bill does not aver that Green was disturbed in his possession ; that there had been an eviction in fact. This was perhaps unnecessary, as it seems the objection to granting relief, before eviction, in cases of the failure of consideration arising from defects in the title, is placed chiefly on the ground of the incompetency of a court of chancery, as not'possessing any direct jurisdiction over legal titles. It is conceded that it may try title to land when the question rises incidentally, but it is understood not to be within its province, when the case depends on a simple legal title, and is presented directly by the bill. If this be the true reason why a previous eviction is necessary to authorize the interposition of the court, a judgment at law, establishing a failure of title, would be held sufficient for that purpose, without an eviction. Abbott v. Allen, 2 Johns. Ch. R. 519.
And upon the authority of this case, we might be disposed to *455 regard the recovery in ejectment as equivalent to an actual eviction, if it were decisive of the question .under examination. But the recovery averred in the bill was had upon the legal title in the parties, against whom the equitable title of Finucane is asserted. A state of case wholly different would be presented, if the judgment at law against Green had been obtained on a legal title paramount to that of Dickson’s heirs. Their title may be perfectly good at law; non constat, that Finucane’s is not good in equity. If the title in the heirs of Dickson were good at law, they were compelled to recover against Green in the action of ejectment, who held under the subordinate equitable title derived from Finucane. The judgment recovered against Green, therefore, does not prove that Finucane’s title is more defective than Green understood it to be at the purchase, nor that Finucane will be unable to coerce a conveyance from the heirs of Dickson and Caldwell. Green’s defence has, therefore, not been materially strengthened by the supplemental matter of his last bill. The case, as between Finucane and himself, stands as it did when this court, on a former occasion, held, that “ if he could have any relief in equity, it could not be granted on any thing short of a showing that he never can get a title.” 9 S. & M. 143. McDonald’s claim remains covered by Finucane’s defence.
But, were it conceded that.the judgment in ejectment and the admitted insolvency of the vendors, had changed the relations between Green and Finucane, would that affect the claim of McDonald %
No exception whatever is taken to the title to one half of the lot, claimed through Caldwell; and although Green might claim a rescission of the contract, on the ground of a failure of title to the half claimed by the heirs at law of Dickson, as between himself and Finucane and Barnes, yet that fact must have an important effect on the decision of the controversy in reference to McDonald, who is shown to be a bona, fide purchaser, for a valuable consideration, and without notice of Green’s equity, of the note, given for one half of the price of the lot. For although it be generally true, that the maker of a promissory note may avail *456 himself of any defence in an action by the assignee, which he could have urged in a suit by the payee, as Green purchased with a knowledge of the defect in the title, and secured himself by covenants against its ultimate failure, he should not be permitted to contest the payment for the amount covered by his indemnity. The ground of defence is a total failure of consideration ; but this fails unless Green is permitted to reject the title to one half of the lot, about which there is no dispute. To compel him to pay McDonald’s note, would not even be a hardship, as he is indemnified to that extent. To allow him to claim a rescission of the contract, and evade the payment of the note, would be the grossest injustice to McDonald.
Let the decree be affirmed.